[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 6, 2006
THOMAS K. KAHN
CLERK

_____

Nos. 05-13457 & 05-14671

_____

D. C. Docket No. 04-60619-CV-JIC

ESSEX INSURANCE COMPANY,

Plaintiff-Appellant,

versus

MERCEDES ZOTA,
MIGUEL ZOTA,

Defendants-Third-Party
Plaintiffs-Appellees,

LIGHTHOUSE INTRACOASTAL, INC.,
JACK FARJI, an individual,
BROWARD EXECUTIVE BUILDERS, INC.,

Defendants-Appellees,

R.A. BRANDON & CO., INC.,

Third-Party
Defendant.

Appeals from the United States District Court
for the Southern District of Florida

**(October 6, 2006)**

Before TJOFLAT and CARNES, Circuit Judges, and HODGES,[*] District Judge.

CARNES, Circuit Judge:

This case involves an insurance coverage dispute arising in Florida, the proper resolution of which depends on unsettled state law. The answers to the state law questions at the core of the case are sufficiently unclear and difficult that we think the proper course is to certify them to the Florida Supreme Court, which can provide authoritative answers.

## I.

Mercedes Zota was injured when she fell from scaffolding while painting a mural on the second story ceiling of a home under construction in Lighthouse Point, Florida. Zota was performing work as a salaried employee of Perla Lichi Designs and the President of Trompe L'Oeils 'R' Us when she was injured. Trompe L'Oeils and Perla Lichi Designs had contracted with Lighthouse Intracoastal, Inc., the owner of the premises where Zota was injured, to paint the

---

[*]Honorable William Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

ceiling of that residence. After the incident, Zota and her husband, Miguel Zota, brought a negligence action against: Lighthouse; Broward Executive Builders, Inc., the general contractor for the project; and Jack Farji, a fifty percent shareholder of Lighthouse and the owner of Broward. Lighthouse's insurer, the Essex Insurance Company, then filed this action seeking declaratory relief against Lighthouse, Broward, Farji, and the Zotas. It sought a determination and declaration of its rights and obligations with respect to the defendants in the negligence action.

## II.

The facts relevant to the insurance dispute are these. Lighthouse, which is in the business of building "spec homes," secured various types of insurance to cover its activities as a home builder. Part of its insurance coverage is a surplus lines insurance policy issued by MacDuff Underwriters, Inc. for Essex Insurance (Essex policy). MacDuff is the surplus lines agent for Essex. The surplus lines policy in question was delivered by MacDuff to R.A. Brandon & Company. Brandon is Lighthouse's producing agent, which means that it has undertaken to secure the various types of insurance that Lighthouse wanted. When it secured insurance policies for Lighthouse, Brandon received copies of the policies, reviewed them for accuracy, and then provided them to Lighthouse. Brandon received a copy of the

3

Essex policy, but Brandon, Essex and MacDuff all failed to provide a copy of it to Lighthouse.

## III.

In the district court, both Essex and the defendants filed motions for summary judgment in this declaratory action. Essex contended that the terms of Lighthouse's policy preclude coverage. The defendants contended that Essex had violated Florida Statutes §§ 626.922 and 627.421 by not delivering the policy to Lighthouse and, therefore, Essex was precluded from denying coverage. As a fallback position, the defendants contended that the Zota incident was covered under the policy anyway. The district court agreed with the defendants' first contention and granted their motion for summary judgment, declaring that Essex was precluded from denying coverage because it had failed to deliver the policy to the insured, as required by Florida Statutes §§ 626.922 and 627.421.

The defendants subsequently filed a motion for attorney's fees under Florida Statute § 627.428. The district court granted that motion and entered a judgment for fees and costs against Essex and in favor of Lighthouse, Broward and Farji. Essex has appealed both orders.

## IV.

4

Central to the legal dispute is Florida Statute § 626.922, which provides as follows:

> Upon placing a surplus lines coverage, the surplus lines agent shall promptly issue and deliver to the insured evidence of the insurance consisting either of the policy as issued by the insurer or, if such policy is not then available, a certificate, cover note, or other confirmation of insurance. Such document shall be executed or countersigned by the surplus lines agent and shall show the description and location of the subject of the insurance; coverage, conditions, and term of the insurance; the premium and rate charged and taxes collected from the insured; and the name and address of the insured and insurer. If the direct risk is assumed by more than one insurer, the document shall state the name and address and proportion of the entire direct risk assumed by each insurer. A surplus lines agent may not delegate the duty to issue any such document to producing general lines agents without prior written authority from the surplus lines insurer. A general lines agent may issue any such document only if the agent has prior written authority from the surplus lines agent. The surplus lines agent must maintain copies of the authorization from the surplus lines insurer and the delegation to the producing general lines agent. The producing agent must maintain copies of the written delegation from the surplus lines agent and copies of any evidence of coverage or certificate of insurance which the producing agent issues or delivers. Any evidence of coverage issued by a producing agent pursuant to this section must include the name and address of the authorizing surplus lines agent.

Fla. Stat. § 626.922(1). Also relevant to the dispute is Florida Statute § 627.421, which provides: "Subject to the insurer's requirement as to payment of premium, every policy shall be mailed or delivered to the insured or to the person entitled thereto not later than 60 days after the effectuation of coverage." Fla. Stat. § 627.421(1).

5

The district court interpreted these two statutory provisions to require delivery of the policy directly to the insured. Because the policy was delivered only to Lighthouse's producing agent, Brandon, and never delivered directly to Lighthouse, the court held that Essex had failed to comply with these statutes. The court concluded that as a penalty or sanction for its failure to comply with the delivery provisions Essex could not use the language of the policy against Lighthouse to bar coverage.

Section 626.922(1) requires that the surplus lines agent, MacDuff in this case, deliver evidence of the insurance to the insured. Florida law appears to provide that, "delivery of an insurance policy to an agent constitutes delivery to the insured." Reliance Ins. Co. v. D'Amico, 528 So. 2d 533, 534 (Fla. 2d DCA 1988); see also Prudential Ins. Co. v. Latham, 207 So. 2d 733, 735 (Fla. 3d DCA 1968); United Nat'l Ins. Co. v. Jacobs, 754 F. Supp. 865, 869 (M.D. Fla. 1990). However, the district court noted that § 626.922 was amended in 1998 and it pointed out that none of the relevant decisions addressed the post-amendment version of § 626.922. The court then concluded that the plain language of § 626.922 requires delivery directly to the insured, and delivery to the insured's agent will suffice only where there is a written delegation of authority to do that.

By its terms, the first sentence of § 626.922(1) requires a surplus lines agent

6

to issue <u>and</u> deliver evidence of insurance to the insured.  Fla. Stat. § 626.922(1) ("the surplus lines agent shall promptly issue and deliver to the insured evidence of the insurance . . . .").  The fourth sentence (the written delegation rule) states that the surplus lines agent may not delegate the duty to issue the evidence of insurance without prior written authorization from the surplus lines insurer.  Fla. Stat. § 626.922(1) ("A surplus lines agent may not delegate the duty to issue any such document to producing general lines agents without prior written authority from the surplus lines insurer.").  Finally, the next to last sentence of the subsection provides that "[t]he producing agent must maintain copies of the written delegation from the surplus lines agent and copies of any evidence of coverage or certificate of insurance which the producing agent issues <u>or</u> delivers."  Fla. Stat. § 626.922(1) (emphasis added).

The parties in this case dispute the relevance of the amendment to § 626.922 and the legislative history behind that amendment.  Before the 1998 amendment, § 626.922 provided:

> Upon placing a surplus lines coverage, the surplus lines agent shall promptly issue and deliver to the insured evidence of insurance consisting of either the policy as issued by the insurer or, if such policy is not then available, a certificate, cover note, or other confirmation of insurance.

As a result of the 1998 amendment, the section now reads:

7

A surplus lines agent may not delegate the duty to issue any such document to producing general lines agents without prior written authority from the surplus lines insurer. A general lines agent may issue any such document only if the agent has prior written authority from the surplus lines agent. The surplus lines agent must maintain copies of the authorization from the surplus lines insurer and the delegation to the producing general lines agent. The producing agent must maintain copies of the written delegation from the surplus lines agent and copies of any evidence of coverage or certificate of insurance which the producing agent issues or delivers.

Fla. Stat. § 626.922(1). The district court found that the 1998 amendment, which added the written delegation rule to § 626.922, superceded the rule from Florida case law that delivery to the insured's agent constitutes delivery to the insured.

The district court also found that § 627.421(1) applies to this case and requires delivery to the insured. The parties dispute whether that provision, which we have already quoted, applies to surplus lines insurers at all. Essex contends that it is inapplicable but, argues that even if it does apply, the delivery requirement is satisfied by the delivery of the policy to Lighthouse's agent. The defendants argue that § 627.421 does apply to surplus lines insurers and that, like § 626.922, it can only be satisfied by delivery directly to the insured.

If there was a violation of § 626.922 or § 627.421, the next question is whether the appropriate remedy is to preclude the insurer from asserting lack of coverage under the terms of the policy. One way to view such a remedy is as a form of equitable estoppel. The general rule in Florida is that equitable estoppel

8

may not be used affirmatively to create or extend coverage under an insurance contract. Crown Life Ins. Co. v. McBride, 517 So. 2d 660, 661 (Fla. 1987). Florida courts have recognized an exception and will apply estoppel "to create insurance coverage where to refuse to do so would sanction fraud or other injustice." Id. at 662. However, in this case, the defendants do not allege that Essex or MacDuff engaged in conduct that would amount to fraud.

Essex relies on AIU Ins. Co. v. Block Marina Inv., Inc., 544 So. 2d 998 (Fla. 1989). In that case, the trial court held that the insurer was prohibited from denying coverage under a Florida statute which stated that "liability insurer[s] shall not be permitted to deny coverage based on a particular coverage defense" unless the insurer complies with certain notice requirements. Id. at 998. The Florida Supreme Court quashed the decision of the district court and held that non-compliance with the statute only prohibited insurers from asserting defenses to coverage that would otherwise exist; it did not preclude the insurer from denying coverage "where the coverage sought is expressly excluded or otherwise unavailable under the policy." Id. at 1000. The opinion notes that the general rule that estoppel may not be used to create coverage is a "long-standing rule" not altered by the statute. Id. It also states that interpreting the statute to preclude insurers from denying coverage based on an express coverage exclusion in the

9

policy would have the effect of re-writing the policy and this would raise "grave constitutional questions [regarding] the impairment of contracts and the taking of property without due process of law." Id.

The defendants attempt to confine the scope of the AIU decision to interpretation of the particular Florida statute at issue in that case. A strong argument can be made, however, that the AIU decision evidences the Florida Supreme Court's reluctance to do what the defendants seek here, which would have the effect of altering the terms of the insurance contract to create coverage that is not provided for under the policy. See id.

Two Florida decisions have addressed whether the appropriate remedy for a violation of § 627.421 is to prevent the insurer from denying coverage. In ZC Ins. Co. v. Brooks, the Fourth District Court of Appeal of Florida found that the insurer had failed to comply with § 627.421 because it had not provided the insured with any information on the exclusion at issue. 847 So. 2d 547, 550 (Fla. 4th DCA 2003). Because of that failure, the court held that the insurer could not rely on that exclusion to deny coverage even though the claim at issue otherwise would have been defeated by the exclusion if applied. Id. at 551. However, an important consideration in the court's analysis was the fact that the insurer had given documents to the insured and those documents seemed to indicate that there was

coverage. See id. The court held that providing the insured with documents that defined the coverage without also defining the applicable exclusions was tantamount to fraud by omission. Id. Because of that fraud, the court found that the situation fell under the exception and applied promissory estoppel to create coverage. Id. In the case before us no one contends that there was any fraud, intentional or otherwise.

In another case, the Fifth District Court of Appeal refused to extend coverage despite the insurer's violation of § 627.421. In T.H.E. Ins. Co. v. Dollar Rent-A-Car Sys., Inc., 900 So. 2d 694 (Fla. 5th DCA 2005), the policy was not delivered to the insured, but the exclusion at issue was for driving while intoxicated and the rental agreement that the insured received clearly indicated that driving the vehicle under the influence of alcohol would deprive the renter of insurance coverage. Id. at 695. The court rejected the argument that the insurer's failure to deliver a copy of the policy prevented application of the exclusion. Id. It reasoned that the purpose of the statute is to provide notice of exclusions to the insured "and this was accomplished by placing the notice in large print, in plain language, in the rental agreement." Id. The court explained that "[p]rejudice to the insured should be considered when imposing any sanction for failure to deliver a policy of insurance as required by section 627.421." Id. at 696. The insured was

11

not prejudiced by the failure to deliver a copy of the policy in that case because the rental agreement itself gave him notice of the exclusion.  Id.

If the district court erred in holding that Essex was precluded from asserting lack of coverage because of its violation of Florida Statutes §§ 626.922 and 627.421, then the Court must determine whether Essex was entitled to judgment based on two relevant coverage exclusions in the policy.  The first is the contractor, builder, or developer exclusion which provides:

> If you are a contractor, builder or developer, there is no coverage under this policy for . . .
>
> "Bodily injury," "personal injury," or "property damage" caused by acts of independent contractors/sub-contractors contracted by you or on your behalf unless you obtain Certificates of Insurance from them providing evidence of at least like coverage and limits of liability as provided by this policy and naming you as an additional insured.
>
> "Bodily injury," "personal injury," or "property damage" sustained by any independent contractor/sub-contractor, or any employee, leased worker, temporary or volunteer help of same, unless a Named Insured or employee of a Named Insured is on site, at the time of the injury or damage, and the Named Insured's actions or inactions are the direct cause of the injury or damage, or the injury or damage is directly caused by an employee of the Named Insured.

Lighthouse did not obtain the required certificates of insurance covering Zota, so there is no coverage under the first paragraph if Lighthouse is a "contractor, builder or developer," and there is none under the second paragraph unless an employee of Lighthouse was on site at the time of Zota's accident and directly caused her

12

injuries. Although Lighthouse asserts that Jack Farji was on site at the time of the Zota incident, it concedes that there is no evidence that Farji's actions were the direct cause of Zota's injury. Therefore, there would be no coverage if Lighthouse is a "contractor, builder or developer."

It is well-established in Florida that "an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer." Berkshire Life Ins. Co. v. Adelberg, 698 So. 2d 828, 830 (Fla.1997). Therefore, if there is an ambiguity in an insurance policy, that ambiguity should be construed against the insurer. Purrelli v. State Farm Fire & Cas. Co., 698 So. 2d 618, 620 (Fla. 2d DCA 1997). An insurance policy is ambiguous "if it is susceptible to two or more reasonable interpretations that can fairly be made." Cont'l Cas. Co. v. Wendt, 205 F.3d 1258, 1261 (11th Cir. 2000). The court may look to parol evidence in interpreting an insurance contract only if there is an ambiguity. Fireman's Fund Ins. Co. v. Tropical Shipping and Const. Co., 254 F.3d 987, 1003 (11th Cir. 2001).

The parties dispute the role Lighthouse played with respect to the property where the Zota incident occurred. The district court did not make any findings for summary judgment or other purposes regarding the activity Lighthouse actually conducted at this residence. Lighthouse contends that it was merely the owner of

13

the land where the home was being constructed and that Broward was the contractor. Lighthouse cites the Commercial Liability Declarations page of the policy issued by Essex. On that page Essex describes Lighthouse's business activity as: "Owner of land where dwellings are being built." Lighthouse also argues that the terms are ambiguous because they are susceptible to more than one reasonable interpretation and, therefore, the terms should be construed against Essex as the drafter.

Essex, of course, contends that the terms "builder, contractor and developer" are plain and that Lighthouse fits within the plain and ordinary meaning of those terms. Essex also submitted evidence of another policy that Lighthouse obtained to cover the same property where Mercedes Zota was injured. On that policy Lighthouse admitted that it was the "builder" and "contractor" for that property. Essex also submitted evidence from other policies that Lighthouse had obtained in the past where it had described itself as a "General Contractor–Home Builders" and "General Contractor–Builder–Single family dwelling." Essex contends that it would be inappropriate for Lighthouse to now argue that it does not fit within the definition of those terms or that they are ambiguous when it used the same terms to describe its activities in other insurance policies.

There is a second provision of the insurance contract which is relevant to

14

this dispute.  An exclusion in Lighthouse's policy provides:

> This insurance does not apply to any claim, suit, cost or expense
> arising out of "bodily injury" to . . . any employee of a Named Insured
> arising out of and in the course of employment or while performing
> duties related to the conduct of the Insured's business . . .

The parties dispute whether Zota was an employee of Lighthouse under the policy.

Contending that Zota was an employee of Lighthouse, Essex points out that in Lighthouse's answer in the underlying negligence action it stated that it was the statutory employer of Zota for purposes of the worker's compensation laws of Florida.  Essex argues that even if this admission does not bind Lighthouse it raises an issue of fact as to whether Zota was an employee of Lighthouse.  The defendants respond by citing the deposition testimony of the Associate Vice President of Essex.  They contend that in his testimony he admitted that Zota was not an employee of Lighthouse as the term is defined in the policy.  As Essex apparently concedes, the Vice President stated in his deposition that Essex should have admitted that Zota was not an employee as defined in the policy.

If the party's contrary admissions do not determine the factual issue then it appears that neither party is entitled to summary judgment on this issue.  The parties rely solely on the other side's admissions and do not offer any other evidence regarding the particulars of the relationship between Zota and Lighthouse.  In fact, Essex concedes that if Lighthouse is not bound by its

15

admission that it was the "statutory employer," then the issue is a question of fact for trial.

**III.**

If summary judgment for the defendants is due to be affirmed, or if they otherwise obtain a judgment in their favor, there is an attorney's fees issue that must be decided. The district court awarded the defendants attorney's fees under Florida Statute § 627.428, which provides:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Fla. Stat. § 627.428(1). Section 627.428 is found in Part II of Chapter 627.

Essex challenges the application of § 627.428 to surplus lines insurers, arguing that under the plain language of Fla. Stat. § 627.021, none of Chapter 627 applies to them. Section 627.021 is found in Part I of Chapter 627 and is entitled "Scope of this part." Fla. Stat. § 627.021 (emphasis added). It states that:

(2) This chapter does not apply to: . . .

(a) Reinsurance, except joint reinsurance as provided in s. 627.311. . . .

(e) Surplus lines insurance placed under the provisions of ss.

626.913–626.937.

Fla. Stat. § 627.021(2) (emphasis added).  Essex argues that no statutory

construction is necessary because the language of § 627.021(2)(e) is clear on its

face.

The defendants respond with a number of arguments.  First, they contend

that the title of § 627.021 indicates that the legislature intended that only Part I of

Chapter 627 not apply to surplus lines insurers.  They cite Florida Statute §

627.401 in support of their position.  That section is found in Part II of Chapter 627

and entitled "Scope of this part."  It provides:

No provision of this part of this chapter applies to:

(1)  Reinsurance. . . .

Fla. Stat. § 627.401.  The defendants argue that if § 627.021 did apply to the whole

chapter there would be no need for the legislature to include reinsurance in §

627.401 because it would already be excluded from all of chapter 627.

Second, the defendants point to two Florida decisions that hold § 627.428

applies to surplus lines insurers.  In English & Am. Ins. Co. v. Swain Groves, Inc.,

218 So. 2d 453 (Fla. 4th DCA 1969), the court held that § 627.0127 (which is now

§ 627.428) applied to a surplus lines insurer.  Id. at 458.  Thereafter, in 1988, the

17

Florida legislature amended § 627.021 to add the provision: "This chapter does not apply to . . . surplus lines insurance placed under the provisions of §§ 626.913–626.937."

In 1995 the same intermediate appellate court was presented with the same question. See Chacin v. Generali Assicurazioni Generali Spa, 655 So. 2d 1162 (Fla. 3d DCA 1995). In answering the question the same way it had in English before the amendment, the court's only discussion was to block quote the relevant portion of the English decision. See id. at 1162. It did not mention the amendment to § 627.021.

Essex argues that Chacin is flawed because it relied on English without taking note of the language of § 627.021 which excludes surplus lines insurance from chapter 627. The defendants argue that Chacin is the law of Florida and must be applied. They note that Chacin was decided more than ten years ago and there has been no legislative action on the subject since then.

The district court agreed with the defendants regarding the meaning of § 627.021. It reasoned:

> The titles of both sections, "Scope of this Part," indicate that the exclusions only apply to each part, and not the entire chapter. Furthermore, had the legislature intended for § 627.021 to apply to the entire chapter, it would not have included "Reinsurance" under both sections §§ 627.[021] and 627.401. In other words, if the legislature had intended for § 627.[021] to apply to the entire chapter, the

18

legislature would only have excluded joint reinsurance under § 627.401, rather than all reinsurance, since that was the only form of reinsurance permitted under § 627.[021]. The fact that the statute excludes "reinsurance" in two separate parts indicates that the first exclusion was not intended to apply to the entire chapter, but only to apply to the first part.

This interpretation is also in accordance with the court's decision in Chacin . . . . Plaintiff contends that the holding in Chacin is no longer applicable because it relied on the decision in English . . . which was based on § 627.021 prior to its amendment. . . .

Plaintiff's argument lacks merit, however, given that Chacin was decided after the amendment to Fla. Stat. § 627.021. . . . In Chacin, the court did not exclusively cite the decision in English, but made specific mention of the relevant statutes in their amended form. Therefore, the Court finds that the holding in Chacin is still good law.

Essex contends that, although the title of § 627.021 might create some ambiguity, the language of § 627.021(2)(e) is clear on its face. It cites Askew v. MGIC Dev. Corp. of Fla., 262 So. 2d 227 (Fla. 4th DCA 1972), which interpreted a Florida statute with conflicting language and section headings. The statutory provision created a sixty day limitation on filing taxpayer suits for assessment, while the title of the section indicated that the limitation applied only to appeals from the decisions of the Board of Equalization. The court rejected the argument that the limitation applied only to the Board's decisions as "sophistry and caution[ed] that the statutory section headings, inserted by the statutory revisors and/or legislative service bureau as a convenient visual reference to the content, are

19

not themselves a part of the statute." Id. at 228.

At least when we are dealing with federal law, the heading or title of a statute cannot trump the plain meaning of the text. The Supreme Court has instructed us that "the title of a statute and the heading of a section cannot limit the plain meaning of the text. For interpretive purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain." Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co., 331 U.S. 519, 528–29, 67 S. Ct. 1387, 1392 (1947) (citations omitted). In accordance with that mandate this Court has held repeatedly that section headings may only be used to interpret a statute when the statute is ambiguous. See, e.g., United States v. Ferreira, 275 F.3d 1020, 1029 (11th Cir. 2001); Scarborough v. Office of Personnel Mgmt., 723 F.2d 801, 811 (11th Cir. 1984). If this were a question of federal law and the interpretation of a federal statute, we would not hesitate to hold that the district court had erred in using the heading of a statutory section to "undo . . . that which the text makes plain." See Brotherhood, 331 U.S. at 529, 67 S. Ct. at 1392. But this case arises under Florida law and involves the interpretation of a Florida statute, and there are no decisions of that state's highest court precisely on point as to the meaning and effect of Florida Statute § 627.428. Since we are certifying

20

other issues of state law to the Florida Supreme Court, we think it prudent to send this one along with them.[1]

## IV.

As we have explained, there are a number of unresolved issues of Florida law in this case. The Florida Supreme Court is the only body that can definitively decide them. Therefore, we certify the following questions to that Court:

1.    Whether Fla. Stat. § 626.922 or § 627.421, or both, require delivery of evidence of insurance directly to the insured, so that delivery to the insured's agent is insufficient.

2.    Whether, if the delivery requirement of Fla. Stat. § 626.922 or § 627.421, or both, was not met in this case the appropriate remedy is to preclude the insurer from asserting lack of coverage under the terms of the policy.

3.    If either the first or second question is answered in the negative, whether Lighthouse is a "builder, contractor or developer" under the terms of the insurance contract, so that there is no coverage.

---

[1]The final judgment issued by the district court included attorney's fees and costs in favor of Lighthouse, Farji and Broward. Broward was not insured under the Essex policy and, therefore, is not eligible for attorney's fees under § 627.428. Even if the district court did not err in awarding attorney's fees, both parties agree that it did err in awarding them in favor of Broward. As a result, if the part of the final judgment awarding attorney's fees is not to be set aside in its entirety, it must be altered so that it is in favor of Lighthouse and Farji only. Essex does not contend that this would affect the amount of the award.

21

4.      If either the first or second question is answered in the negative, whether Zota is an employee of Lighthouse under the policy.

5.      If Lighthouse is entitled to coverage, whether Fla. Stat. § 627.428 applies to surplus lines insurers.

Of course, our phrasing of the certified questions, as well as the order in which we list them, is merely suggestive and not intended to restrict the Florida Supreme Court in any way in its consideration of the relevant state law issues. Swire Pacific Holdings Inc. v. Zurich Ins. Co., 284 F.3d 1228, 1234 (11th Cir. 2002). It may restate the issues as it sees fit and is free to determine that a resolution of all the issues we have posed is not necessary to dispose of the case. In short, we leave all aspects of the state law issues in the Florida Supreme Court's hands. That Court's assistance will be, as always, greatly appreciated.

The entire record on appeal in this case, together with copies of the briefs of the parties, is transmitted herewith.

QUESTIONS CERTIFIED.