**SHARP GENERAL CONTRACTORS, INC., Plaintiff,**

v.

**MT. HAWLEY INSURANCE COMPANY, Defendant.**

**Case No. 06–61573–CIV.**

United States District Court, S.D. Florida, Ft. Lauderdale Division.

March 27, 2009.

John Hockin, Adam Charles Linkhorst, Linkhorst & Hockin P.A., Palm Beach Gardens, FL, Stephen Leonard Ziegler, Murray Simmons & Ziegler, Fort Lauderdale, FL, for Plaintiff.

Sina Bahadoran, Hinshaw & Culbertson LLP, Miami, FL, for Defendant.

### ORDER

DONALD L. GRAHAM, District Judge.

**THIS CAUSE** came before the Court on Defendant's Motion for Summary Judgment [D.E. 28].

**THE COURT** has considered the Motion, the pertinent portions of the record, and is otherwise fully advised in the premises.

## I.  BACKGROUND

In March 2004, Defendant Mt. Hawley Insurance Company ("Mt. Hawley") issued a commercial general liability policy to Plaintiff Sharp General Contractors, Inc. ("Sharp") related to construction services that Sharp was to perform at a mail-order pharmaceutical facility.  By all accounts, on May 20, 2004, a fire occurred that caused smoke damage to the facility and its contents.  The owner of the facility filed a claim against its insurer which was paid.  The owner's insurer then filed a subrogation claim against the Plaintiff herein, Sharp.  Sharp sought coverage from Mt. Hawley pursuant to the March 2004 policy.  Mt. Hawley denied the claim alleging that Sharp failed to comply with the policy requirements related to subcontractors.  Sharp then filed an action in the Seventeenth Judicial Circuit for Broward County and the Defendant removed the suit to federal Court [D.E. 1]. Plaintiff has since filed a two-count Amended Complaint seeking Declaratory Relief in Count I and alleging Breach of Contract in Count II [D.E. 16].

Defendant has filed a Motion for Summary Judgment asserting, *inter alia*, that the Florida Claims Administration Statute (CAS), Fla. Stat. § 627.426, does not apply to surplus line insurers, like Mt. Hawley. The Defendant also asserts that the CAS has no application to this case as Defendant has not asserted a "coverage defense" under the CAS. Finally, Defendant asserts that even if the Florida CAS applies, that the Defendant has complied with the statute.

Plaintiff has filed an Opposition to the Motion for Summary Judgment wherein

Plaintiff counters that, under the current law in Florida, the CAS does apply to surplus carriers. Plaintiff further asserts that the CAS applies to the instant facts as the Defendant seeks to assert a "coverage defense" and thus had an obligation to give the Plaintiff written notice of its reservation of rights via registered or certified mail within thirty days of when the insurer knew or should have known of the defense. Finally, the Plaintiff maintains that an issue of material fact regarding the timeliness of the Defendant's reservation of rights exists, thereby precluding an entry of summary judgment.

Both Parties acknowledged in their filings that the question of whether the Florida Claims Administration Statute applies to surplus line insurers had been certified to the Florida Supreme Court by the Eleventh Circuit in the matter of *Essex Ins. Co. v. Mercedes Zota, et. al.,* 466 F.3d 981 (11th Cir.2006)(certifying question to Florida Supreme Court, Case No. SC06–2031). In addition, Defendant maintained, and Plaintiff did not dispute, that Mt. Hawley is a surplus line insurer as defined under the relevant statute. Thus, this Court determined that the Florida Supreme Court's determination of whether the Florida CAS applies to surplus carriers was central to resolving the Defendant's Motion for Summary Judgment and decided to hold the matter in abeyance until the Florida Supreme Court issued its opinion on the certified question raised in *Essex Ins. Co. v. Mercedes Zota, et. al.,* 466 F.3d 981 (11th Cir.2006).

On June 26, 2008, the Florida Supreme Court issued its opinion in *Essex Ins. Co. v. Mercedes Zota, et al.,* 985 So.2d 1036 (Fla.2008). With regard to the application of the Florida CAS to surplus line insurers in light of the exclusionary language in Fla. Sta. 627.021(2)(e), the court held that under a full statutory analysis, section 627.021(2) applies only to Part I of Chapter 627. *Essex,* 985 So.2d at 1042. Thus, Section 627.426, the section that is at issue here, applies to surplus lines insurance because this section appears in Part II of Chapter 627. Having established that the CAS applies to Mt. Hawley, the Court will now address the other arguments proffered by Defendant in support of its motion for summary judgment.

## II. *LAW & DISCUSSION*

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides, Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R.Civ.P. 56(c). The moving party has the burden of production. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). When the moving party has met this burden by offering sufficient evidence to support the motion, the party opposing must then respond by attempting to establish the existence of a genuine issue of material fact. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598.

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The Court must also determine whether the dispute about a material fact is indeed genuine. In other words, is the "evidence . . . such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. *See also Marine Coatings of Alabama, Inc. v. United States,* 932 F.2d 1370, 1375 (11th Cir.1991) (dispute of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party). Finally, a party cannot defeat a motion for summary judgment by resting on the conclusory allegations in the pleadings. *See* Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### B. The Florida Claims Administration Statute

The Florida Claims Administration Statute ("CAS") states in relevant part:

(2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:

(a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and

(b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:

1. Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured;

2. Obtains from the insured a non-waiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or

3. Retains independent counsel which is mutually agreeable to the parties. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.

Fla. Stat. 627.426(2). In *AIU Ins. Co. v. Block Marina Investment, Inc.,* the Florida Supreme Court held that "the term 'coverage defense,' as used in section 627.426(2) means a defense to coverage that otherwise exists." *AIU Ins. Co. v. Block Marina Investment, Inc.,* 544 So.2d 998, 1000 (Fla.1989)

### C. Undisputed Facts

In 2004, Sharp was the general contractor for a construction project at the National Medical Health Center ("NMHC") in Miramar, Florida, a mail order pharmaceutical facility [D.E. 8 at 2]. On March 8, 2004, Mt. Hawley provided a quote for Commercial General Liability Coverage to Sharp's insurance broker [D.E. 29–3, Exh. B].

On March 9, 2004, Mt. Hawley issued a binder to Sharp [D.E. 29–3, Exh. C]. Under the heading "Quote requirements after binding", the following is included: "Written confirmation that certificates of insurance and Additional insured status are required from all subcontractors showing GL limits equal to the above" [D.E. 29–3, Exh. C]. Mt. Hawley issued the CGL Policy to Sharp for the period commencing March 9, 2004 and ending March 9, 2005. [D.E. 29–3, Exh. A]. Sharp's policy includes the following endorsement (hereinafter the "Contractors Endorsement"):

## CONTRACTORS—CONDITIONS OF COVERAGE

It is hereby understood and agreed that conditions of coverage under this policy are:

1. Insured will obtain certificates of insurance with limits of liability equal to or greater than those provided by this policy from all subcontractors prior to commencement of any work performed for the insured.

2. Insured will confirm that the subcontractors' insurance policies are valid and have not been cancelled prior to commencement of any work by the subcontractors performed for the insured.

3. Insured will obtain hold harmless agreements from subcontractors indemnifying against all losses from the work performed for the insured by any and all subcontractors.

4. Insured will be named as additional insured on all subcontractors general liability policies.

5. Insured will give notice of claim to all "potential insurers" as soon as practicable.

"Potential insurers" means all insurance companies who may be obligated to defend the insured as either a named insured or an additional insured. "Potential insurers" includes the insurers of all subcontractors who were contractually obligated to name the insured as an additional insured on their own insurance policy(ies).

In the event the insured fails to comply with the above conditions for a subcontractor whose work directly or indirectly gives rise to a claim, coverage for such claim will be voided under this policy. Insured agrees that we need not demonstrate any prejudice to us in order to enforce these conditions of coverage.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms of the conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

[D.E. 29–2, Exh. A, CGL 102A (01/04) ].

In an email dated April 27, 2004, Sharp's insurance broker, CRC Insurance Services, Inc. ("CRC"), informed Sharp's insurance agent, Coverall Concept Insurance Agency, Inc. ("Coverall"), that Mt. Hawley had not received some of the items that were requested on the Sharp binder dated March 9, 2004 [D.E. 32 at 36]. Included in the list of items were "written confirmation that certificates of insurance and Additional Insured status are required from all subcontractors showing GL limits equal to the insured" and a "[c]opy of the insured's current subcontract agreement with hold harmless wording and insurance requirements" [D.E. 32, at 36].

On May 14, 2004, Mt. Hawley sent Sharp a Notice of Cancellation effective June 16, 2004 [D.E. 29–4, Exh. J]. The reason for the cancellation was "Failure to comply with binding requirements" [D.E. 29–4, Exh. J].

On May 20, 2004, a fire occurred at the project when an electrical panel where the electrician was working arced and set fire to a pallet [D.E. 8]. After the fire, NMHC asserted that its pharmaceuticals were damaged by the smoke [D.E. 8]. NMHC submitted a claim to its insurer, Lexington Insurance Company ("Lexington") [D.E. 8]. After Lexington paid the claim, it demanded reimbursement from Sharp [D.E. 8].

Sharp notified Mt. Hawley of the fire and resulting loss on May 24, 2004 [D.E. 29–3, Exh. D]. That same day, Mr. John Arasi, Sharp's President, signed a letter under penalty of perjury "to confirm that certificate of Insurance and Additional In-

sured are required from all subcontractors showing General Liability equal to the Insured SHARP General Contractors, Inc" [D.E. 29–3, Exh. E]. On May 25, 2004, Mt. Hawley sent a letter to Mr. Arasi requesting a complete copy of the contract between Sharp and Cristiano Electric ("Cristiano"), the electrical subcontractor. [D.E. 29–3, Exh. F; D.E. 8, at 3]. Sharp was asked to include any certificates of insurance that were issued to Sharp [D.E. 29–3, Exh. F]. On June 11, 2004, Mt. Hawley hired an adjuster to investigate the loss and Sharp's compliance with the policy requirements [D.E. 29–3, Exh. G]. The adjuster submitted his report on June 23, 2004 [D.E. 29–3, Exh. G].

Sharp did not obtain a hold harmless agreement from Cristiano, and it was not named as additional insured on Cristiano's general liability policy [D.E. 29–3, Exh. G]. Thus, Sharp did not comply with the requirements in the Contractors endorsement [D.E. 8, at 3]. On July 14, 2004, Mt. Hawley issued its first reservation of rights letter by fax only [D.E. 29–4, Exh. H]. No copy was sent by registered or certified mail [D.E. 8 at 3; D.E. 29–4, Exh. H].

Lexington Insurance Company, the insurer for NMHC, has filed a lawsuit against Sharp and Cristiano Electric in the Broward County Circuit Court [D.E. 8, at 3; D.E. 29–4, Exh. I]. Sharp filed a third party complaint against Mt. Hawley for declaratory relief, and against CRC and Coverall for negligent procurement of insurance policy and breach of fiduciary duty [D.E. 29–4, Exh. I].

## D. Whether the CAS Applies to Mt. Hawley's Defense

Although it concedes that it did not obtain a hold harmless agreement and was not named as additional insured on Cristiano's general liability policy in violation of Conditions 3 and 4 of the Contractors En-

dorsement, Sharp argues that Mt. Hawley has waived its "coverage defense" by failing to comply with the CAS. Specifically, Sharp argues that Mt. Hawley failed to send a reservation of rights letter within 30 days after it knew or should have known of the "coverage defense". *See* Fla. Stat. § 627.426(2)(a). Mt. Hawley counters that the CAS is not implicated by the Contractors Endorsement because it is not a "coverage defense". Rather, Mt. Hawley explains, Sharp's failure to comply with the Contractors Endorsement has resulted in a complete lack of coverage.

In *AIU Ins. Co. v. Block Marina Investment, Inc.*, the Florida Supreme Court held that "the term 'coverage defense,' as used in section 627.426(2) means a defense to coverage that otherwise exists." *AIU Ins. Co. v. Block Marina Investment, Inc.*, 544 So.2d 998, 1000 (Fla.1989). The court added:

[w]e do not construe the term to include a disclaimer of liability based on a complete lack of coverage for the loss sustained … if the insurer fails to comply with the requirements of the statute, it may not declare a forfeiture of coverage which otherwise exists based on a breach of a condition of the policy. However, its failure to comply with the requirements of the statute will not bar an insurer from disclaiming liability where a policy or endorsement has expired or where the coverage sought is expressly excluded or otherwise unavailable under the policy or existing law.

*AIU*, 544 So.2d at 1000. The court explained that "while the doctrine of estoppel may be used to prevent a forfeiture of insurance coverage, the doctrine may not be used to create or extend coverage." *AIU*, 544 So.2d at 1000 (citing *Crown Life Ins. Co. v. McBride*, 517 So.2d 660 (Fla. 1987)). Furthermore, "construing the terms 'coverage defense' to include a dis-

claimer of liability based on an express coverage exclusion has the effect of rewriting an insurance policy when section 627.426(2) is not complied with, thus placing upon the insurer a financial burden which it specifically declined to accept." *AIU*, 544 So.2d at 1000. "The Claims Administration Statute was not intended to create coverage under a liability insurance policy that never provided coverage." *Progressive Am. Ins. v. Papasodero*, 587 So.2d 500, 502 (Fla. 2d DCA, 1991).

Sharp argues that the requirements that it be included as additional insured on all subcontractor policies and obtain hold harmless agreements from its subcontractors are "unquestionably coverage defenses". Sharp explains that "even if coverage existed under the policy for the claim submitted by Sharp, if Sharp fails to comply with the binding requirements, insurer can utilize such justification for rejecting coverage for the claim. This is the quintessential example of a coverage defense" [Sharp's Response Brief, D.E. 32 at 9]. In sum, Sharp argues that Mt. Hawley's denial of coverage is a "coverage defense" because it is not based on a provision that disclaims liability but rather on Sharp's failure to comply with a condition of coverage under the policy. The Court is not persuaded by this argument.

The Contractors Endorsement states that "[i]n the event the insured fails to comply with the above conditions for a subcontractor whose work directly or indirectly gives rise to a claim, *coverage for such claim will be voided under this policy*." (emphasis added) [D.E. 29–2, Exh. A] Thus, the policy states clearly that if Sharp fails to comply with the conditions in the Contractors Endorsement, then no coverage exists. As such, section 627.426(2)(a) of the CAS would not apply to Mt. Hawley's defense because it is not asserting a coverage defense but a lack of coverage.

Other courts have found a lack of coverage in similar situations. For example, in *Progressive American Insurance Co. v. Papasodero*, the insurance application included a statement that "the policy shall be null and void if the information provided in the application were false, misleading, or would materially affect the acceptance of risk by Progressive." *Progressive American Insurance Co. v. Papasodero*, 587 So.2d 500, 501 (Fla. 2d DCA 1991). The policy itself provided that "if any representation contained in the application were false, misleading or materially affected the acceptance or rating of risk by Progressive, the policy would be null and void from its inception." *Id.* at 501. In response to Progressive's argument that the policy was void due to a material misrepresentation made by the insured, the insured argued that Progressive could not deny her coverage due to its noncompliance with section 627.426 of the CAS. The court found that adherence to the CAS was irrelevant because the trial court's finding that there had been a material misrepresentation had the effect of rendering the policy null and void from its inception. *Id.* at 501. According to the court: "[t]he Claims Administration Statute was not intended to create coverage under a liability insurance policy that never provided coverage." *Id.* at 501. The court added: "[i]t is true that the effect of the [CAS] is to bar an insurance company from denying coverage. In this case, however, the insurance carrier is not said to be 'denying coverage'; there was no coverage in the first instance." *Id.* at 501.

Similarly, in *Continental Insurance Co. v. Gimopoulos*, the court declined to construe an insurer's denial of coverage as a "coverage defense" where the express language of the policy stated that "[t]here is no coverage from the beginning of this policy if you or your agent has omitted, concealed, misrepresented, sworn falsely, or attempted fraud in reference to any

matter relating to this insurance before or after any loss." *Continental Insurance Co. v. Gimopoulos,* Case No. 8:05–CV–1658–T–17MSS, 2008 WL 1776552, at *5, 2008 U.S.Dist. LEXIS, at *15 (M.D.Fla. Apr. 18, 2008). The court found that "because the express language of the [policy] states that there is no coverage where fraud exists, there can be no 'coverage defense' in this case ... [t]herefore, § 627.426(2) is inapplicable to this case." *Gimopoulos,* 2008 WL 1776552, at *5, 2008 U.S.Dist. LEXIS, at *16.

Furthermore, in *Royal Surplus Lines Ins. Co. v. Delta Health Group,* the United States District Court for the Northern District of Florida declined to construe a condition requiring underlying insurance as a "coverage defense" for purposes of the CAS. *Royal Surplus Lines Ins. Co. v. Delta Health Group, Inc.,* No. 3:03CV419–RS, 2006 WL 167565 (N.D.Fla. Jan. 23, 2006). In *Royal,* the insured, Delta, obtained an umbrella policy from the insurer, Royal, that required the maintenance of a minimum schedule of underlying insurance as set forth in Condition 17 of the policy. Specifically, Condition 17 stated in relevant part:

> 17. Maintenance of "Underlying Insurance"
>
> (a) You agree to maintain the "underlying insurance" in full force and effect during the term of this policy ... if you do not maintain the "underlying insurance" in full force and effect or fail to meet all conditions and warranties of such "underlying insurance", this policy shall apply as if those policies were available and collectible.

*Royal,* 2006 WL 167565, at *3. Initially, Delta obtained both an umbrella policy and an underlying insurance policy from Royal. When Royal notified Delta that it was cancelling the underlying insurance policy, Delta obtained underlying insurance from another company, but this new underlying insurance did not meet the minimum amount required under Royal's umbrella policy. Subsequently, Royal and Delta renegotiated the umbrella policy in part to set a lower limit for the underlying insurance, but there was a gap period between the old and new umbrella policies. As a result, Delta was not in compliance with the umbrella policy during the gap period. Royal argued that under Condition 17, Delta had to fulfill the underlying insurance requirement during the gap period before coverage under the umbrella policy is triggered. Delta countered that Condition 17 is not a grant of coverage or an exclusion of coverage but, rather, a condition of coverage and, as a result, Royal is precluded from denying coverage because it failed to comply with Fla.Stat. § 627.426(2). The Court found that construing Condition 17 as a coverage defense "would provide Delta with coverage that it is not entitled to under the explicit terms of Condition 17 and in direct contravention to the guidelines laid out in AIU." *Id.* at *4. Furthermore, the court found that such an interpretation would reward Delta for breaching the umbrella policy agreement. *Id.* at *4. Based on the foregoing, the Court concluded that "for purposes of FCAS and per the mandates of AIU, Condition 17 is not a coverage defense, and as such, Royal was not required to adhere to the [CAS] as a matter of law." *Id.* at *4.

The instant case is analogous to *Royal.* Here, the Conditions of Coverage in the Contractors Endorsement require that Sharp be named additional insured on all subcontractor policies and obtain hold harmless agreements from its subcontractors [D.E. 29–2, Exh. A]. The Contractors endorsement further states: "[i]n the event the insured fails to comply with the above conditions for a subcontractor whose work directly or indirectly gives rise to a claim, coverage for such claim will be voided under this policy." *Id.* Thus, construing the Conditions of Coverage as "cover-

age defenses" would provide Sharp with coverage that it is not entitled to under the express terms of the Contractors Endorsement and reward its breach of the policy agreement. Such an interpretation would essentially rewrite the insurance policy and place upon Mt. Hawley a financial responsibility which it explicitly declined to accept. *See AIU,* 544 So.2d at 1000. "The Claims Administration Statute was not intended to create coverage under a liability insurance policy that never provided coverage." *Progressive Am. Ins. v. Papasodero,* 587 So.2d 500, 502 (Fla. 2d DCA, 1991).

Based on the foregoing, the Court finds that Mt. Hawley's assertion that there is no coverage due to Sharp's failure to comply with the Conditions of Coverage in the Contractors Endorsement is not a "coverage defense". Therefore, section 627.426(2) of the CAS does not apply to Mt. Hawley's defense. Because the Court has found that the CAS does not apply to Mt. Hawley's defense, it will not address whether Mt. Hawley's reservation of rights letter was timely under the CAS.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [D.E. 28] is **GRANTED.** It is further

**ORDERED AND ADJUDGED** that the CGL Policy furnished by Mt. Hawley to Sharp does *not* provide coverage for the loss claimed by Lexington Insurance Company, which was sustained as a result of the May 20, 2004 fire at the NMHC facility. It is further

**ORDERED AND ADJUDGED** that this case is CLOSED and all pending motions are **DENIED AS MOOT.**