862 So.2d 1 (2003)
DEPARTMENT OF REVENUE, Appellant,
v.
VAL-PAK DIRECT MARKETING SYSTEMS, INC., a Delaware corporation authorized to do business in Florida, Appellee.
No. 2D02-2596.
District Court of Appeal of Florida, Second District.
June 27, 2003.
Rehearing Denied January 6, 2004.
*2 Charles J. Crist, Jr., Attorney General, and J. Clifton Cox, Assistant Attorney General, Tallahassee, for Appellant.
Cass D. Vickers of Vickers Madsen & Goldman, LLP, Tallahassee, for Appellee.
CANADY, Judge.
Val-Pak Direct Marketing Systems, Inc. (VPDMS), sued the Florida Department of Revenue (the Department), pursuant to section 72.011, Florida Statutes (2000), seeking a refund of sales taxes paid on printed advertising materials distributed by mail. VPDMS's refund claim was based on its contention that the sales on which the taxes had been paid were covered by a sales tax exemption for certain advertising publications contained in section 212.08(7)(w), Florida Statutes (2000). VPDMS and the Department filed cross-motions for summary judgment. The trial court agreed that the sales in question were entitled to the statutory exemption, granted VPDMS's motion for summary judgment, denied the Department's motion for summary judgment, and entered final judgment in favor of VPDMS. The Department now appeals the decision of the trial court. Because we conclude that materials printed and distributed by VPDMS are not publications covered by the exemption in section 212.08(7)(w), we reverse the decision of the court below.
VPDMS is, as its name implies, involved in the business of direct mail marketing. VPDMS prints, collates, and mails in its "trademark blue envelopes" an assortment of separate items including fliers, order forms, coupons, business reply cards, and other similar, printed materials consisting exclusively of advertising. The package of printed advertising materials prepared and disseminated by VPDMS is referred to as Val-Pak. VPDMS operates through a franchise system in which its franchisees obtain orders from local businesses who wish to have their advertising materials printed and inserted in Val-Pak. The sales taxes for which VPDMS seeks a refund were remitted by VPDMS to the Department after being collected from VPDMS's franchisees. VPDMS obtained assignments from its franchisees to pursue the refund claim on their behalf. VPDMS sought a refund of taxes paid for the period from September 1, 1994, through June 30, 1999, in the amount of $1,594,798.24. The Department determined that the actual amount of taxes paid during the pertinent period was $1,281,109.45 and denied any refund on the ground that the exemption claimed by VPDMS was not applicable.
The exemption for certain advertising publications found in section 212.08(7)(w) was first adopted in 1990. Ch. 90-132, § 93, at 491, Laws of Fla. Although certain amendments to subsection (7)(w) have been made, ch. 96-320, § 15, at 1526, Laws of Fla., the text of the portion of subsection (7)(w) containing the exemption for advertising publications has remained unchanged since its adoption in 1990. Section 212.08(7)(w) provides:
Certain newspaper, magazine, and newsletter subscriptions, shoppers, and community newspapers.Likewise exempt are newspaper, magazine, and newsletter subscriptions in which the *3 product is delivered to the customer by mail. Also exempt are free, circulated publications that are published on a regular basis, the content of which is primarily advertising, and that are distributed through the mail, home delivery, or newsstands.
The first sentence after the heading of subsection (7)(w) applies to paid subscriptions to publications and is not relevant to VPDMS's claim. The basis for VPDMS's claim of exemption is in the following sentence, which provides an exemption from the sales tax for materials that satisfy all of five discrete requirements. For any item to be exempt under section 212.08(7)(w) it must be:
1. "free";
2. a "circulated publication[]";
3. "published on a regular basis";
4. composed of "primarily advertising"; and
5. "distributed through the mail, home delivery, or newstands."
There is no dispute that Val-Pak meets requirements 1, 4, and 5, but there is a vigorous dispute between VPDMS and the Department regarding whether Val-Pak meets requirements 2 (circulated publication) and 3 (published on a regular basis). Because we conclude that a proper understanding of requirement 2 resolves the issue on appeal, we will not address whether Val-Pak meets requirement 3.
The trial court's decision that Val-Pak was entitled to the exemption was based on its conclusion that the content of Val-Pak was similar to the content of an exempt, newspaper-like publication or shopper known as the Thrifty Nickel, which contained primarily or exclusively advertising. The court determined that the Thrifty Nickel was "materially indistinguishable from Val-Pak" and that there was no basis "for inferring a legislative intent" to exempt advertising materials such as the Thrifty Nickel, while denying exemption to advertising materials such as Val-Pak.
A final order granting a motion for summary judgment is subject to de novo review. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000). Here the dispositive legal issue is whether the trial court correctly interpreted the scope of the statutory exemption from taxation. In determining whether the trial court erred in its interpretation of section 212.08(7)(w), we look to the commonly understood meaning of the words of the statutory text. Bryan v. Butterworth, 692 So.2d 878, 880 (Fla.1997) (citing Shevin v. Byron, Harless, Schaffer, Reid & Assocs., 379 So.2d 633, 640 (Fla.1980), for conclusion that statutorily undefined term is to be given meaning "consistent with the most common understanding of the term"); Bryant v. State, 712 So.2d 781, 783 (Fla. 2d DCA 1998) (concluding that statutorily undefined term is to be interpreted in accordance with its "ordinary meaning or common understanding").
The merit of the refund claim made by VPDMS depends on the meaning of the word publication. VPDMS's claim that the term publication is synonymous with printed materials lacks merit because the common understanding of publication does not encompass items like the printed materials contained in Val-Pak.
The word publicationlike most, if not all wordshas a range of meanings. In some contexts, publication is a noun denoting the action of disseminating information. A salient example of this sort of usage of publication in a legal context is the use of the word to describe the act by which a defamatory statement is communicated. See Shafran v. Parrish, 787 So.2d 177, 179 (Fla. 2d DCA 2001) (stating that "[p]ublication requires that the allegedly *4 defamatory statement be communicated to one other than the person defamed"). Section 212.08(7)(w), however, does not use publication to denote or describe an action. In the context of the statute, which exempts the sale of certain tangible items from the sales tax, the word publication can only be understood as a concrete nounthat is, a noun denoting a tangible item.
When used as a concrete noun, publication is commonly understood to mean "a published work," Webster's Third New International Dictionary 1836 (1993) (emphasis supplied), or "an issue of printed material offered for sale or distribution," The American Heritage Dictionary of the English Language 1464 (3d ed.1992) (emphasis supplied). As these definitions indicate, publication is a word commonly used to describe newspapers, magazines, and books. Contrary to the argument advanced by VPDMS, publication is not commonly understood as synonymous with printed materials. A publication may consist of printed material, but not all printed material constitutes a publication. A publication is presented in an identifiable form as a work or an issue. A published work or an issue of a publication necessarily has a unitary physical quality like the unitary physical quality of a newspaper, magazine, or book. Although it need not be bound together, a publication is identifiable as a discrete physical item, such as a newspaper, magazine, or book. An assortment of separate printed advertisements on separate pieces of paper inserted in an envelope cannot properly be described as a work or an issue and therefore is not a publication.
The trial court improperly relied on the similarity of the content of the shopper or newspaper-like publication known as the Thrifty Nickel and the content of Val-Pak in reaching its conclusion that Val-Pak is exempt from the sales tax. The fact that the Thrifty Nickel and Val-Pak are both made up of advertising is not sufficient to establish that they are both entitled to the same treatment under the exemption. Subsection (7)(w) does require that items eligible for exemption be composed of "primarily advertising." But subsection (7)(w) goes beyond the content requirement "primarily advertising"and imposes a format requirement"circulated publications." And the format of Val-Pak does not meet the latter requirement. The differential treatment of the Thrifty Nickel and Val-Pak is not basedas the trial court suggests would be necessaryon "inferring a legislative intent." On the contrary, the plain language of the statute requires that the Thrifty Nickel and Val-Pak be treated differently because they have different formats. The Thrifty Nickel is in the format of a publication; Val-Pak is not in the format of a publication.
Having concluded that the commonly understood meaning of publication is clear and that the operative statutory text is therefore unambiguous, we need proceed no further with our analysis. See Verizon Fla., Inc. v. Jacobs, 810 So.2d 906, 908 (Fla.2002) (stating that "[t]here is no need to resort to other rules of statutory construction when the language of the statute is unambiguous and conveys a clear and ordinary meaning"). But even if we were to concede that publication might also have a broader meaningnamely, a meaning synonymous with printed materialstwo factors strongly militate against the more expansive reading of the term urged by VPDMS. First, tax exemptions are to be narrowly construed. Second, the pertinent words of the heading of subsection (7)(w)"shoppers and community newspapers"point to a narrow construction.
*5 Doubtful language in a statutory provision granting a tax exemption is to be construed against the taxpayer. Sebring Airport Auth. v. McIntyre, 642 So.2d 1072, 1073 (Fla.1994); United States Gypsum Co. v. Green, 110 So.2d 409, 413 (Fla.1959). This is the converse of the rule that ambiguous statutory provisions imposing taxes are construed in favor of the taxpayer and against the taxing authority. Green, 110 So.2d 409; Dep't of Revenue v. GTE Mobilnet of Tampa, Inc., 727 So.2d 1125, 1128 (Fla. 2d DCA 1999). These rules of construction do not require an unreasonably narrow reading of the text. They simply provide guidelines for interpreting terms or provisions that can reasonably be understood to have more than one meaning. If a reasonable reading of the provision can lead to both a narrower and a broader application of that provision, the rule of strict construction requires that the court adopt the narrower application. Cf. Premier Ins. Co. v. Adams, 632 So.2d 1054, 1057 (Fla. 5th DCA 1994) (noting that when an insurance policy is "ambiguous or fairly susceptible to two reasonable interpretations" the policy will be "construed strictly against the insurer"). Thus, even if publication could reasonably be understood to mean "printed materials," that broad meaning of the term would be rejected under the strict construction canon in favor of the narrower meaning of the term and the more restrictive application of the exemption from taxation.
Our understanding of the meaning of publication is also supported by the language of the heading for section 212.08(7)(w), which consists of two distinct parts describing the items exempted by the subsection. The first part of the heading refers to "[c]ertain newspaper, magazine and newsletter subscriptions" and describes the items exempted by the first sentence of the text of subsection (7)(w). The second part of the heading refers to "[c]ertain ... shoppers[] and community newspapers," and describes the items exempted by the second sentence of the text of subsection (7)(w)the portion of the subsection relevant to VPDMS's claim. A shopper is defined as "a locally distributed newspaper of retail advertisements." Random House Unabridged Dictionary 1769 (2d ed.1993). Both community newspaper and shopper are commonly understood to have meanings that would not encompass an envelope filled with separate pieces of printed advertising materials. The format of community newspapers and shoppers is entirely different from the format of Val-Pak.
VPDMS argues that the heading of subsection (7)(w) should not be used as a guide to interpreting the scope of the exemption. In support of its position, VPDMS relies on the decision in State v. Bradford, 787 So.2d 811 (Fla.2001), where the supreme court addressed an argument that a fraudulent intent element should be read into a statutory provision. The statute in question prohibited the solicitation of insurance claims under certain circumstances, and the defendant asserted that a fraudulent intent element should be read into the prohibition because it appeared in a chapter of the statutes entitled "Fraudulent Practices" and in a section entitled "False and Fraudulent Insurance Claims." The supreme court responded to this argument by citing State v. Bussey, 463 So.2d 1141, 1143 (Fla.1985):
The arrangement and classification of laws for purposes of codification in the Florida Statutes is an administrative function of the Joint Legislative Management Committee of the Florida Legislature. § 11.242, Fla. Stat. (1983). The classification of a law or a part of a law in a particular title or chapter of Florida Statutes is not determinative on the issue of legislative intent, though it may *6 be persuasive in certain circumstances. Where there is a question, established principles of statutory construction must be utilized.
Bradford, 787 So.2d at 819 (emphasis supplied). The supreme court went on in Bradford to hold that a fraudulent intent element should not be read into the statutory prohibition. Cf. Fajardo v. State, 805 So.2d 961, 963 (Fla. 2d DCA 2001) (recognizing that the "title of a legislative enactment and, less frequently, the title within the codified statutes may be helpful in construing an ambiguous statute").
The reference by the supreme court in Bradford and Bussey to the "arrangement and classification of laws for purposes of codification in the Florida Statutes" is inapplicable in this case. The Division of Statutory Revision does establish certain chapter and section headings as part of the continuous revision system. § 11.242, Fla. Stat. (2002). Here the heading to section 212.08(7)(w), however, was not added in the statutory revision process; it was a part of the session law text originally adopted by the legislature. Ch. 90-132, § 93, at 491; ch. 96-320, § 15, at 1526. Moreover, the heading to subsection (7)(w) is not a broad description of a variety of provisions as is almost always the case with the title of a chapter and frequently the case with the heading of a lengthy section containing numerous subsections. Instead, the heading of subsection (7)(w) is the legislature's detailed description of a relatively simple statutory subsection. As such, it can be viewed not simply as an aid to be used in construing the operative text, but as itself a part of the text that is to be construed. And it reinforces the conclusionbased on the commonly understood meaning of publicationthat Val-Pak is not a publication.
Since Val-Pak is not a publication under section 212.08(7)(w), the order of the trial court granting VPDMS's motion for summary judgment and denying the Department's motion for summary judgment is reversed and the case is remanded with instructions that the trial court enter summary judgment in favor of the Department.
Reversed and remanded with instructions.
STRINGER and SILBERMAN, JJ., Concur.