[No. 83426-1. En Banc.]
Argued September 14, 2010.    Decided February 10, 2011.

RICHARD BOWIE ET AL., *Petitioners*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

4

*Scott M. Edwards* (of *Lane Powell PC*), for petitioners.

*Robert M. McKenna, Attorney General, Donald F. Cofer, Senior Counsel,* and *Heidi A. Irvin, Assistant,* for respondent.

¶1 J.M. JOHNSON, J. — Petitioners Richard and Annette Bowie, d/b/a Val-Pak of Western Washington et al., comprise eight franchisees of Val-Pak Direct Marketing Systems Inc. (VPDMS), a Delaware corporation, with its principal place of business in Largo, Florida. Petitioners solicit advertisements and perform tasks related to their ultimate inclusion in blue "Val-Pak Envelopes," which are distributed in western Washington by VPDMS.

¶2 Petitioners are subject to Washington's business and occupation (B&O) tax statute, chapter 82.04 RCW, but contest the applicable tax rate during the period of 1998-2006. If Val-Pak Envelopes qualify as a "periodical or magazine" as defined in RCW 82.04.280,[1] the applicable tax

---

[1] The statutory language of RCW 82.04.280 in effect from 1998-2006 controls here. The statute during that period reads, in pertinent part, as follows:

> Upon every person engaging within this state in the business of: (1) Printing, and of publishing newspapers, periodicals, or magazines ... the amount of tax on such business shall be equal to the gross income of the business multiplied by the rate of 0.484 percent.
> ....
> As used in this section, "periodical or magazine" means a printed publication, other than a newspaper, issued regularly at stated intervals at least once every three months, including any supplement or special edition of the publication.

rate would be 0.484 percent. Otherwise, the applicable tax rate is 1.5 percent under the "catchall" rate of RCW 82.04.290(2)[2] because petitioners' business activities do not fall within a specific classification listed in chapter 82.04 RCW. Petitioners do not claim or argue that Val-Pak Envelopes are newspapers.

¶3 Because Val-Pak Envelopes are not "periodicals or magazines," and because petitioners are not engaged in the business of "printing, and of publishing," we find that petitioners' business is taxable under the general, higher rate of RCW 82.04.290(2) and not under RCW 82.04.280. We reverse the Court of Appeals and affirm the trial court's grant of summary judgment to the Washington Department of Revenue (Department).

FACTS AND PROCEDURAL HISTORY

¶4 Petitioners entered into franchise agreements with VPDMS at various points in time prior to January 1998, the beginning of the tax refund period in question.[3] The franchise agreement states that VPDMS "is engaged in the business of publishing and distributing by direct mail

---

Former RCW 82.04.280 (LAWS OF 1998, ch. 343, § 3). This definition of "periodical or magazine" has remained unchanged since 1994 and is still in effect as of this date. Former RCW 82.04.280 (LAWS OF 1994, ch. 112, § 1); *see also* RCW 82.04-.280(2)(c). In 2009, the first part of RCW 82.04.280 was amended to read, "Upon every person engaging within this state in the business of: (1) Printing materials other than newspapers, and of publishing periodicals or magazines." Former RCW 82.04.280 (LAWS OF 2009, ch. 461, § 2).

[2] Former RCW 82.04.290(2) (LAWS OF 1998, ch. 343, § 4) reads:

Upon every person engaging within this state in any business activity other than or in addition to those enumerated in RCW 82.04.230, 82.04.240, 82.04.250, 82.04.255, 82.04.260, 82.04.270, 82.04.280, and section 1 of this act, and subsection (1) of this section; as to such persons the amount of tax on account of such activities shall be equal to the gross income of the business multiplied by the rate of 1.5 percent.

The tax rate under RCW 82.04.290(2) remained unchanged throughout the time period in question. LAWS OF 2005, ch. 369, § 8; LAWS OF 2004, ch. 174, § 2; LAWS OF 2003, ch. 343, § 2; LAWS OF 2001, 1st Spec. Sess., ch. 9, § 6; LAWS OF 1998, ch. 343, § 4.

[3] The petitioners have confirmed that the franchise agreement accurately reflects the franchisees' business relationship with VPDMS. Clerk's Papers at 159-60.

promotional literature and packages known as VAL-PAK Envelopes." Clerk's Papers (CP) at 227. Petitioners, on the other hand, have "the right and license to sell advertising inserts or other advertising products offered by [VPDMS] to be placed in VAL-PAK Envelopes to be distributed solely within the [relevant] Territory[4] . . . ." *Id.* at 229.

¶5 Petitioners have the exclusive right and license "to order Mailings of VAL-PAK Envelopes distributed into the Territory, and to approve each Advertising Insert which [VPDMS] proposes to place in any VAL-PAK Envelope to be mailed within the Territory." *Id.* at 229-30. The franchise agreement, however, does not include "any right on the part of FRANCHISEE to itself print, publish or distribute VAL-PAK Envelopes or Advertising Inserts bearing the Marks or to cause any third party to do any of the foregoing . . . ." *Id.* at 230. In fact, the petitioners are expressly prohibited from engaging in such activities.

¶6 The franchise agreement states that VPDMS is the sole publisher and distributor of Val-Pak Envelopes and that VPDMS shall have final approval over the form and content of each item to be included in a Val-Pak Envelope and shall have the sole discretion to determine the appearance and style of Val-Pak Envelopes.

¶7 The legal dispute we resolve here began with a letter sent to the Department on October 14, 2002, by a lawyer representing Val-Pak of Western Washington. The letter requested a ruling on the appropriate B&O tax classification for income received from Val-Pak advertising.

¶8 The Department responded by ruling that "advertising income received by publishers of magazines and periodicals *is* also taxed at the printing and publishing classification rate [stated in RCW 82.04.280]" but noted that a question remained concerning whether the Val-Pak Enve-

---

[4] "Territory" refers to the zone within which a franchisee sells advertising inserts or other advertising products. Val-Pak Envelopes, printed and published by VPDMS, have issued in Val-Pak north's territory since 1987 in accordance with a schedule that has varied over the years. The remaining petitioners commenced their Val-Pak franchises at various times prior to January 1998.

lopes were periodicals "issued regularly at stated intervals." CP at 40 (emphasis added). For a publication to be considered a periodical or magazine, the Department ruled that "it would need to have a place in the publication where the issue interval is stated." *Id.*

¶9 Seeking to demonstrate that Val-Pak Envelopes were periodicals, David and Annette Bowie of Val-Pak of Western Washington provided a mailing distribution schedule to the Department. The Department responded on December 4, 2002, by stating that the Val-Pak Envelopes *did* in fact meet the definition of "periodical" under RCW 82.04.280: it ruled that the statute does not require the intervals to be "stated on the publication for it to meet the definition of a magazine or periodical." *Id.* at 42. The petitioners filed refund claims with the Department in response to the clarification.

¶10 On March 12, 2003, however, the Department rescinded the letter of December 4, 2002, in another letter, finding that the Val-Pak Envelopes are *not* periodicals but are "advertising circulars."[5] *Id.* at 44-45. Val-Pak Envelopes, therefore, were taxable under RCW 82.04.290(2) and *not* under RCW 82.04.280. The rescission was based in pertinent part on the Department's tax ruling, Determination No. 88-10, 4 Wash. Tax Dec. 437 (1987), which had found a taxpayer was not taxable under RCW 82.04.280 because the taxpayer arranged only for the printing of coupons and flyers and their distribution by mail, with the actual printing and mailing provided by a third party. The Department ruled that petitioners were providing the same service as the taxpayer in the determination.

---

[5] The Department's tax ruling provided the following definitions:

Periodical: published at regular intervals, as weekly, monthly, etc.; a periodical publication.

Publication: the printing and distribution, usually for sale, of books, magazines, newspapers, etc.; something published, esp. a periodical.

Circular: an advertisement, letter, etc., usually prepared in quantities for extensive circulation.

Determination No. 88-10, 4 Wash. Tax Dec. 437 (1987), *available at* http://taxpedia .dor.wa.gov/zipfiles.htm.

¶11 Petitioners filed an appeal with the Department's appeals division on April 11, 2003, requesting that the rescission letter be reversed. The request was denied on May 29, 2003. On December 28, 2005, the appeals division issued Final Executive Level Determination No. 05-0217E (Determination), which found the petitioners' businesses to be properly taxable under RCW 82.04.290(2). The Determination held that "[b]ecause Taxpayers do not print the envelopes, but merely publish[ ] them, the envelopes must qualify as a 'periodical or magazine' in order for the printing and publishing B&O tax classification to apply." CP at 279. Noting that "[n]othing in the title [of the session law adopted by the legislature][6] suggests that 'periodical' or 'magazine' was intended to include advertising coupons stuffed into an envelope," the Determination concluded that the Val-Pak Envelopes are not printed publications. *Id.* at 280. Petitioners filed suit in Thurston County Superior Court.

¶12 On cross motions for summary judgment, the trial court ruled in favor of the Department, holding that petitioners were not the publishers of Val-Pak Envelopes and that Val-Pak Envelopes were not "periodicals or magazines" under RCW 82.04.280. Judge Hicks ruled, "When looking at the overall legislative intent, I just can't bring myself to say that this [(Val-Pak Envelopes)] is what the legislature meant by a periodical or magazine." Report of Proceedings at 45.

¶13 On appeal, however, the Court of Appeals held that the "coupon mailings fit, at least in part, within the definition of 'periodical' or 'magazine' because the mailings are printed pieces of paper comprising a 'printed publication.' " *Bowie v. Dep't of Revenue*, 150 Wn. App. 17, 23-24, 206 P.3d 675 (2009).

¶14 Nevertheless, the Court of Appeals noted that it was unclear whether Val-Pak Envelopes were issued " 'regularly

---

[6] *See* LAWS OF 1994, ch. 112, § 1 (Substitute House Bill 2235) ("AN ACT Relating to business and occupation taxes for periodicals and magazines; amending RCW 82.04.280 . . . .").

at stated intervals at least once every three months' " as required by RCW 82.04.280. *Bowie*, 150 Wn. App. at 23 (quoting RCW 82.04.280). The Court of Appeals, therefore, held that the term "stated interval" required taxpayers seeking the benefit of RCW 82.04.280 to "provide the intended audience with its anticipated mailing or publication interval." *Id.* at 23-24. The Court of Appeals reversed the trial court and remanded the case for a determination whether petitioners' mailing distribution schedules were in fact readily available to recipients of the Val-Pak Envelopes. *Id.* at 24.

¶15  The Court of Appeals also stated that it did not reach the issue of whether petitioners " 'engage[d] within this state in the business of . . . [p]rinting and of publishing' " Val-Pak Envelopes. *Id.* at 24 n.9 (most alterations in original) (quoting RCW 82.04.280). Instead, it surmised that "it appears that engaging in the business of publishing should encompass more than simply being the designated publisher of printed matter." *Id.* (citing *Ford Motor Co. v. City of Seattle, Exec. Servs. Dep't*, 160 Wn.2d 32, 156 P.3d 185 (2007)). Petitioners sought review.

¶16  We granted review of the Court of Appeals' interpretation. *Bowie v. Dep't of Revenue*, 167 Wn.2d 1009 (2009).

ANALYSIS

¶17  Statutory interpretation is a question of law reviewed de novo. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (citing *City of Seattle v. Burlington N. R.R.*, 145 Wn.2d 661, 665, 41 P.3d 1169 (2002)). The primary objective of any statutory construction inquiry is " 'to ascertain and carry out the intent of the Legislature.' " *Id.* (quoting *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991)). Where statutory language is plain and unambiguous, a statute's meaning must be derived from the wording of the statute itself. *Human Rights Comm'n v. Cheney Sch. Dist. No. 30*, 97 Wn.2d 118, 121, 641 P.2d 163 (1982). Accordingly, our

analysis begins with determining whether Val-Pak Envelopes are "periodicals or magazines."

A. *Val-Pak Envelopes Are Not "periodicals or magazines"*

¶18 Former RCW 82.04.280 (1998) defines "periodical or magazine" as "a printed publication, other than a newspaper, issued regularly at stated intervals at least once every three months, including any supplement or special edition of the publication."

¶19 In *HomeStreet*, we affirmed that we first look to a statute's plain language when interpreting its meaning. *HomeStreet*, 166 Wn.2d at 451 (citing *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007)). If the plain language is subject to only one interpretation, our inquiry ends because plain language does not require construction.[7] *State v. Thornton*, 119 Wn.2d 578, 580, 835 P.2d 216 (1992). Absent ambiguity, the interpretation of a statute's plain language is guided by the common and ordinary meaning of its words. *E.g.*, *Garrison v. Wash. State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7 (1976).

1. The common and ordinary meaning of the statute's plain language

¶20 We may look to the dictionary to determine the plain meaning of an undefined statutory term, here the word "publication." *HomeStreet*, 166 Wn.2d at 451-52; *Garrison*, 87 Wn.2d at 196. *Webster's* defines a "publication" as follows:

**1** : communication (as of news or information) to the public : public announcement : PROCLAMATION[;] **2 a** : the act or process

---

[7] This is not a case controlled by precedent requiring us to construe ambiguous tax statutes in favor of the taxpayer. *See, e.g., Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396-97, 103 P.3d 1226 (2005) (quoting *Ski Acres, Inc. v. Kittitas County*, 118 Wn.2d 852, 857, 827 P.2d 1000 (1992)). While a statute is ambiguous if it is "susceptible to two or more reasonable interpretations," a statute *is not* ambiguous "merely because different interpretations are conceivable." *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005). And, as we have held (although in another context), a statute may possibly be unclear in its application to a specific situation, but this does not render it ambiguous. *See In re Det. of Martin*, 163 Wn.2d 501, 508, 182 P.3d 951 (2008).

of issuing copies (as of a book, photograph, or musical score) for general distribution to the public[;] **b :** a published work [and;] **3 :** the distribution in print esp. in technical journals of a taxonomic name (as of a species or genus) together with such description or illustrative material as will characterize and distinguish the organism or group named.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1836 (2002). We reverse the Court of Appeals and find that Val-Pak Envelopes do not fall within this definition of "publication" as it was intended to be applied by the legislature.

¶21 The statutory interpretation principle ejusdem generis (of the same kind) also leads us to determine that Val-Pak Envelopes are not "periodicals" within the meaning of the statute. *See, e.g., State v. Gonzales Flores,* 164 Wn.2d 1, 13, 186 P.3d 1038 (2008), *cited in State v. Gamble,* 168 Wn.2d 161, 191, 225 P.3d 973 (2010). Under ejusdem generis, wherever a law lists specific things and then refers to them in general, the general statements apply only to the same kind of things that were specifically listed. In this case, where former RCW 82.04.280 specifically lists "newspapers, periodicals, or magazines," the general statement "printed publication" therefore applies only to such things that are commonly understood to be "periodicals or magazines." It does not encompass all conceivable categorizations of printed material.[8] One does not go into a library or bookstore to find Val-Pak Envelopes available under the "periodicals" section.

¶22 Val-Pak Envelopes are not "periodicals or magazines" because they are not "printed publications" as that term is commonly understood and as defined in the dictionary. Both parties agree that the definition of "periodical or magazine" does not include content requirements. Pet. for Review at 3 n.3; CP at 547. That said, we find persuasive

---

[8] The apparent circularity of this definition is dissipated when seen in the light of an apparent attempt by the legislature to avoid a content-based tax preference; we believe that the legislature employed its chosen definition of "periodical or magazine" so as to use nearly every word that could be used to describe what we commonly understand to be a periodical or magazine—without requiring a specific content or purpose requirement of the publication.

the Department's argument that "[t]his does not mean the word *'publication'* in the definition should be interpreted to allow any printed material whatsoever to qualify as a 'periodical or magazine.' " CP at 547 (emphasis added).

¶23 We believe the common and ordinary meaning of what constitutes a "periodical or magazine" does not include Val-Pak Envelopes, a conclusion also supported by the legislative history of RCW 82.04.280, which began as a preferential tax rate for newspapers.[9]

### 2. Support from other jurisdictions

¶24 Other courts have taken up the issue of the status of Val-Pak Envelopes under state tax laws and have ruled consistent with this conclusion. In *Department of Revenue v. Val-Pak Direct Marketing Systems, Inc.*, 862 So. 2d 1, 3-4 (Fla. Ct. App. 2003), the Florida Court of Appeals stated that "[a] publication may consist of printed material, but not all printed material constitutes a publication" and held that Val-Pak Envelopes are not " 'circulated publications' " under a sales tax exemption for "free, circulated publications."[10] A tax refund claim for Val-Pak Envelopes was also

---

[9] The legislature first enacted a retail sales tax exemption for the sale and distribution of newspapers in 1935 as part of the revenue act of 1935 (LAWS OF 1935, ch. 180). Resp't's Answer to Pet. for Review at 14. In 1937, the legislature amended the revenue act to add a preferential tax rate for persons "in the business of printing and of publishing newspapers, periodicals or magazines." LAWS OF 1937, ch. 227, § 4. In 1993, the phrase "periodicals or magazines" was crossed out of the statute while a statutory definition of "newspaper" was finally added. "Newspaper" means:

> [A] publication issued regularly at stated intervals at least once a week and printed on newsprint in tabloid or broadsheet format folded loosely together without stapling, glue, or any other binding of any kind.

LAWS OF 1993, 1st Spec. Sess., ch. 25, § 304 (Second Engrossed Substitute Senate Bill 5967). In 1994, the language "periodicals or magazines" was inserted back into RCW 82.04.280. LAWS OF 1994, ch. 112, § 1 (Substitute House Bill 2235). "Periodicals or magazines" was then defined to mean a "printed publication, other than a newspaper, issued regularly at stated intervals at least once every three months." RCW 82.04.280. This definition remains in effect as of the publication of this opinion.

[10] FLA. STAT. § 212.08(7)(w) provides:

> *Certain newspaper, magazine, and newsletter subscriptions, shoppers, and community newspapers.* —Likewise exempt are newspaper, magazine, and

denied in Nebraska under a state use tax. *See Val-Pak of Omaha, Inc. v. Dep't of Revenue*, 249 Neb. 776, 782-83, 545 N.W.2d 447 (1996). *But see Val-Pak of Cent. Conn. N., Inc. v. Comm'r*, 235 Conn. 737, 669 A.2d 1211 (1996), *aff'g*, 44 Conn. Supp. 133, 670 A.2d 343, 343 (Super. Ct. 1994) (taxpayer was not "purchaser" or "seller" of advertising materials and, thus, was not subject to sales and use taxes in question). Most relevant to our conclusion is the fact that all three of these courts refer to Val-Pak Envelopes as advertising materials, and not as publications. *Val-Pak Direct Mktg. Sys., Inc.*, 862 So. 2d at 2, 3, 5; *Val-Pak of Omaha, Inc.*, 249 Neb. at 778-80; *Val-Pak of Cent. Conn. N., Inc.*, 669 A.2d at 1211-12.

### 3. Petitioners have failed to meet their burden

¶25 The taxpayer bears the burden of proving that the tax paid was incorrect and to establish the correct amount of the tax. RCW 82.32.180 ("At trial, the burden shall rest upon the taxpayer to prove that the tax as paid by the taxpayer is incorrect, either in whole or in part, and to establish the correct amount of the tax."); *see also Dep't of Revenue v. Schaake Packing Co.*, 100 Wn.2d 79, 83, 666 P.2d 367 (1983) (noting that tax exemptions must be construed narrowly and that the burden of establishing a tax exemption falls on the taxpayer); *Tidewater Terminal Co. v. State*, 60 Wn.2d 155, 372 P.2d 674 (1962) (upholding a trial court's order of assessment). The petitioners have failed to meet their burden. This is not a case controlled by precedent requiring us to construe ambiguous tax statutes in favor of the taxpayer. *E.g.*, *Ski Acres, Inc. v. Kittitas County*, 118 Wn.2d 852, 857, 827 P.2d 1000 (1992).

¶26 Finally, we have held that "[u]nlikely, absurd or strained consequences resulting from a literal reading [of a statute] should be avoided." *State v. McDougal*, 120 Wn.2d 334, 350, 841 P.2d 1232 (1992). We believe that interpreting "periodicals or magazines" to include Val-Pak Envelopes

---

newsletter subscriptions in which the product is delivered to the customer by mail. Also exempt are free, circulated publications that are published on a regular basis, the content of which is primarily advertising, and that are distributed through the mail, home delivery, or newsstands.

would result in an unlikely, absurd, or strained consequence that would subvert the legislature's intent behind RCW 82.04.280. We therefore reverse the Court of Appeals' finding that Val-Pak Envelopes "fit, at least in part, within the definition of 'periodical' or 'magazine' because the mailings are printed pieces of paper comprising a 'printed publication.'" *Bowie*, 150 Wn. App. at 23. They do not.

B. *Whether Val-Pak Envelopes Are "Periodicals" Does Not Depend on Whether They Are Issued Regularly at "stated intervals," as That Term Is Defined by the Court of Appeals*

¶27 Petitioners argue that Val-Pak Envelopes are periodicals because the envelopes are issued according to a distribution schedule. But the fact that something is periodic does not make it a periodical. If that were the case, monthly billing statements could be considered "periodicals."

¶28 The Court of Appeals held that the term "stated interval" requires taxpayers seeking the benefit of RCW 82.04.280 to "provide the intended audience with its anticipated mailing or publication interval." *Bowie*, 150 Wn. App. at 23-24. We disagree. We believe the "stated interval[ ]" requirement in RCW 82.04.280 is an additional factor that describes the common and ordinary understanding of what a periodical is, without requiring a content-based analysis. Accordingly, we reverse the Court of Appeals' interpretation of the term "stated interval" and do not find that stamping a date and volume number onto an envelope containing printed material transforms it into a "periodical" as defined by the legislature.

C. *Petitioners Are Not Engaged in the Business of Printing and of Publishing*

¶29 The franchise agreement between petitioners and VPDMS states that VPDMS, not petitioners, "is engaged in the business of publishing and distributing by direct mail promotional literature and packages known as VAL-PAK Envelopes." CP at 227. The franchise agreement explicitly

does not include "any right on the part of [petitioners] to itself print, publish or distribute VAL-PAK Envelopes or Advertising Inserts bearing the Marks or to cause any third party to do any of the foregoing . . . ." CP at 230.

¶30 While contractual language does not control our interpretation of statutory language, the franchise agreement does not help the petitioners' argument. Petitioners rely on *Ford Motor Co.*, 160 Wn.2d at 42, to support the proposition that the language "engaged in the business of" in RCW 82.04.280 "is not limited to persons who bear the title 'publisher,' but is imposed on all persons engaged in business activities that are part of the business of publishing." Appellants' Br. on Appeal at 14; *Ford Motor Co.*, 160 Wn.2d at 42 (reasoning that "[e]ngaging in the business of wholesaling encompasses more business activities than merely making sales"). In *Ford Motor Co.*, however, we did not say that the business of making sales at wholesale encompasses *any* business activity related to the ultimate business of selling. *Ford Motor Co.*, 160 Wn.2d at 42. Here, we find that petitioners are not engaged in the business of publishing where it is VPDMS that actually prints, stuffs, distributes, and mails Val-Pak Envelopes[11] and where petitioners only solicit advertisements and order Val-Pak Envelopes to be distributed by VPDMS. Petitioners are not engaged in the business of "printing, and of publishing." Former RCW 82.04.280.

CONCLUSION

¶31 Val-Pak Envelopes are not "periodicals or magazines," and petitioners are not engaged in the business of "printing, and of publishing" as required by former RCW 82.04.280 for the tax years 1998-2006. Therefore, the appropriate tax rate for petitioners' businesses for the tax

---

[11] Even the address listed on the outside of Val-Pak Envelopes is not that of the Petitioners' business address, but that of VPDMS. *See* CP at 285.

years 1998-2006 is 1.5 percent under RCW 82.04.290(2). We reverse the Court of Appeals and affirm the trial court's grant of summary judgment to the Department, enforcing the common and ordinary meaning of the statute's plain language.

MADSEN, C.J.; C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, FAIRHURST, and STEPHENS, JJ.; and SANDERS, J. PRO TEM., concur.