**TRA FARMS, INC., Plaintiff,**

v.

**SYNGENTA SEEDS, INC.,
et al., Defendants.**

**Case No. 5:12–cv–378–MW/EMT.**

United States District Court,
N.D. Florida,
Tallahassee Division.

March 18, 2013.

Michael David Martin, Michael D. Martin, PA, Lakeland, FL, William Kenneth Crispin, Law Office of William K. Crispin Chtd, Gainesville, FL, for Plaintiff.

John Paul Mandler, Shane Alan Anderson, Faegre Baker Daniels LLP, Minneapolis, MN, Robert King High, Jr., Kitchen Judkins Simpson etc, Tallahassee, FL, Charles Michael Greene, Charles M. Greene, PA, Orlando, FL, for Defendants.

### ORDER DENYING MOTION TO STAY AND FOR RELIEF FROM SCHEDULING ORDER

MARK E. WALKER, District Judge.

This case concerns the sale of allegedly defective watermelon seeds and the statutory prerequisite(s) to filing a legal action pursuant to section 578.26, Florida Statutes.

Plaintiff TRA Farms, Inc ("TRA") owns and farms land in Calhoun County, Florida. ECF No. 1, Ex. A. Defendant Syngenta Seeds, Inc. ("Syngenta") breeds, develops, and produces fruit and vegetable seeds and markets such seeds throughout the southeastern United States, including Florida. ECF No. 1, Ex. A. Defendant Valdosta Plant Company, Inc. ("Valdosta") owns and operates fruit and vegetable transport houses which received seeds from Syngenta and ultimately delivered transplants to TRA. ECF No. 1, Ex. A.

Upon delivery to TRA and initial growth thereafter, the transplants appeared to be viable plants as represented at their purchase. ECF No. 1, Ex. A. However, upon harvesting the fruit, TRA claims that the supposedly seedless watermelon plants were producing fruit which contained black seeds. ECF No. 1, Ex. A. As a result, TRA alleges that it suffered loss of yield, loss of quality, loss of sales, and a substantial reduction in sales prices for its spring 2012 crop. ECF No. 1, Ex. A.

Accordingly, TRA wrote a letter of complaint dated June 15, 2012, to the Florida Department of Agriculture ("Department"), ECF No. 1, Ex. A1, and filed a complaint dated October 9, 2012, in the Fourteenth Judicial Circuit in and for Calhoun County, Florida. ECF No. 1, Ex. A. On November 26, 2012, Syngenta removed the case to federal court. ECF No. 1.

Syngenta filed Defendant Syngenta Seeds, Inc.'s Motion to Stay and Motion for Relief from Scheduling Order, and Memorandum in Support ("Motion"), ECF No. 12. TRA responded with Plaintiff TRA Farms, Inc., Memorandum in Response to Defendant Syngenta Seeds, Inc. Motion to Stay and Motion for Relief from Scheduling Order ("Response"), ECF No. 13, and Plaintiffs Notice of Filing Additional Authority, ECF No. 18. Defendant replied with Defendant Syngenta Seeds, Inc.'s Reply Memorandum in Support of Its Motion to Stay, ECF No. 17. Upon review of the parties' papers and the hearing held on March 12, 2013, the Motion is hereby DENIED.

The issue before the Court is whether the prerequisite to legal action expressed in section 578.26(1)(a) required a prospective plaintiff to simply file a sworn complaint with the Department or whether the entire process set forth in. sections 578.26 and 578.27 ("Process") must first be completed.

### I. Application of Florida Statutes in Federal Court

When dealing with state law, federal courts apply the state courts' interpreta-

tion of the law. *See Essex Ins. Co. v. Zota*, 466 F.3d 981, 990 (11th Cir.2006). It is well-established Florida law that *"[b]efore resorting to the rules of statutory interpretation, courts must first look to the actual language of the statute itself[, and when] the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent" Koile v. State*, 934 So.2d 1226, 1230–31 (Fla.2006) (internal citations and quotations omitted) (emphasis added) ("In such instance, the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent.")

"[T]he Court looks 'primarily' to the plain text of the relevant statute, and *when the text is unambiguous, our inquiry is at an end.*" *E.A.R. v. State*, 4 So.3d 614, 629 (Fla.2009) (internal citation omitted) (emphasis added). *Accord, e.g., Johnson v. State*, 78 So.3d 1305, 1311 (Fla.2012) ("Legislative intent guides statutory analysis, and to discern that intent we must look first to the language of the statute and its plain meaning. Legislative intent is determined primarily from the text of the statute." (internal citations and quotations omitted)). In sum, while courts repeatedly refer to legislative intent as the "polestar" of statutory interpretation, the clear and unambiguous text of a statute need not be "interpreted," and the clear and unambiguous text is accepted as the legislative intent absent an unreasonable result.

■ However, Florida law recognizes a slight variation to the otherwise straightforward reading of the text by explaining that individual subsections may not be read in isolation and instead must be read in the context of the entire statute. *See, e.g., Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC*, 986 So.2d 1260, 1265 (Fla.2008) (" 'Every statute must be read as a whole with meaning ascribed to every portion and due regard given to the semantic and contextual interrelationship between its parts.' " (internal citation omitted)); *Jones v. ETS of New Orleans, Inc.*, 793 So.2d 912, 915 (Fla.2001) ("[J]ust as a single word cannot be read in isolation, nor can a single provision of a statute." (internal citations and quotations omitted)). The Florida Supreme Court has found on numerous occasions that:

> [even] if a part of a statute appears to have a clear meaning if considered alone but when given that meaning is inconsistent with other parts of the same statute or others *in pari materia*, the Court will examine the entire act and those *in pari materia* in order to ascertain the overall legislative intent.

*E.A.R. v. State*, 4 So.3d 614, 629 (Fla.2009) (quoting *ContractPoint*).

Importantly though, "there is a difference between ambiguity and unexpressed intention." *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So.2d 452, 455 (Fla.1992).

> Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity.... Courts have then no power to set aside or evade [the statute's] operation by forced and unreasonable construction.... [T]he Legislature should be held to mean what they have plainly expressed, and consequently, no room is left for construction....

*Id.* at 454. *"[T]he fact that the Legislature may not have anticipated a particular situation[, application, or outcome] does not make the statute ambiguous." Id.* at 456 (emphasis added).

## II. Statutory Text

Because of the significance placed on a statute's text, what language constitutes

statutory text is of primary importance, specifically whether a statute's title or heading[1] is part of the statute's text for purposes of determining the text's clarity or ambiguity. The Eleventh Circuit previously faced this issue and explained that;

> when we are dealing with federal law, the heading or title of a statute cannot trump [or] limit the plain meaning of the text. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. They cannot undo or limit that which the·text makes plain. [Accordingly,] this Court has held repeatedly that section headings may only be used to interpret a statute when the statute is ambiguous [but not as the basis for creating the ambiguity]. If this were a question of federal law and the interpretation of a federal statute, we would not hesitate to hold that the district court had erred in using the heading of a statutory section to undo that which the text makes plain. But this case arises under Florida law and involves the interpretation of a Florida statute, and there are no decisions of that state's highest court precisely on point. . . .

*Essex,* 466 F.3d at 989–90 (internal citations and quotations omitted).

However, although the Florida Supreme Court has not ruled on the issue, a number of Florida appellate courts have. The most recent and unequivocal of which was an opinion out of Florida's Second District Court of Appeal which found that:

> [t]he court first should look to the actual language of the provision in question. Infrequently, *the section headings within the codified Florida Statutes may be helpful in construing an ambiguous statute. However, the rules of construction can only be invoked when a statute is ambiguous. In this case, [the statute] is clear on its face; thus we need not look to the section heading.*

*State v. Menuto,* 912 So.2d 603, 609 (Fla.2d DCA 2005) (internal citations omitted) (emphasis added). *See also Merritt Square Corp. v. State, Dept. of Revenue,* 354 So.2d 143, 144 (Fla. 1st DCA 1978) (finding that the "catchline" of the statute was misleading, confusing, and worthy of corrective legislation, but that the misleading references in the catchline "are not part of and do not modify the unambiguous text of the statute").

In comparison, the Court feels compelled to address another appellate opinion from Florida's Second District preceding *Menuto* in which the court found that *subsection headings* "can be viewed not simply as an aid to be used in construing the operative text, but as itself a part of the text that is to be construed." *Dept. of Revenue v. Val–Pak Direct Mktg. Sys., Inc.,* 862 So.2d 1, 6 (Fla. 2d DCA 2004). However, the court in *Val–Pak* did not cite any authority for that statement of law, the case has not since been cited for that proposition, and the same court subsequently ruled in the alternative in the context of *section headings* less than two years later in *Menuto.*[2]

---

1. References to the terms "title" or "heading" are used interchangeably as well as references to "statute" or "section" by the case law and this Court.

2. Specifically, the court in *Val–Pak* explained that "the heading to subsection (7)(w) is not a broad description of a variety of provisions as is almost always the case with the title of a

chapter and *frequently the case with the·heading of a lengthy section containing numerous subsection." Val–Pak,* 862 So.2d at 6 (emphasis added). In the instant case, section 578.26 is composed of four subsections, each with their own subparts, spanning the initial filing of a sworn complaint, the subsequent Process, and the authority of the Department

Additionally, the establishment and maintenance of the section headings are not within the sole control of the Florida Legislature and are subject to creation and modification by the Division of Statutory Revisions[3] pursuant to section 11.242, Florida Statutes. *See id.* Therefore, it would be unreasonable to treat a section heading as part of a statute's text when the heading may or may not be attributable to the Legislature or to draw a distinction holding that some, but not all, headings are statutory text. This would require readers to search each section's legislative history in order to determine the source of the section's heading and the true statutory text.

The Court agrees that headings, and particularly those attributable to the Legislature, are evidence of legislative intent, but, however, there is no need for a determination of legislative intent unless the statute's text is ambiguous on its face. *See State v. Webb,* 398 So.2d 820, 824–25 (Fla.1981) ("In determining legislative intent, we must give due weight and effect to the title ... which was placed at the beginning of the section by the legislature itself. The title is more than an index to what the section is about or has reference to; it is a direct statement by the legislature of its intent.").

## III. Section 578.26, Florida Statutes

Section 578.26, titled "Complaint, investigation, hearing, findings, and recommendation prerequisite to legal action," states that

> When any farmer is damaged by the failure of agricultural, vegetable, flower, or forest tree seed to produce or perform as represented by the label at-

tached to the seed as required by s. 578.09, *as a prerequisite to her or his right to maintain a legal action* against the dealer from whom the seed was purchased, *the farmer shall make a sworn complaint* against the dealer alleging damages sustained.

Fla. Stat. § 578.26(1)(a) (emphasis added). The remainder of the statute, along with section 578.27, proceeds to discuss the manner in which the complaint should be filed; the dealer's obligation to answer the complaint; and the process by which the complaint would be investigated, reviewed, hearing held, findings made, and recommendation rendered. Fla. Stat §§ 578.26–27.

### A. Section Heading

■ Syngenta argues that section 578.26's heading should be read as statutory text to create ambiguity and evidence the legislature's intent that the completion of the Process be the prerequisite(s) to legal action.

Although the heading does in fact appear to be inconsistent with the text of section 578.26, specifically subsection (1)(a), that issue is not before the Court because the heading is not statutory text and the actual text is not ambiguous. While the Court recognizes, as did the Eleventh Circuit in *Essex,* that the Florida Supreme Court has not addressed this particular issue, Florida appellate courts have held that headings are not statutory text and should not be considered unless the text is first found to be ambiguous. *Menuto,* 912 So.2d at 609.

Further, in the context of discerning legislative intent, there are numerous

to adopt rules to govern the Process. By its very language, section 578.26 is the type of statute which the court in *Val–Pak* was distinguishing itself from to justify reading the "legislature's detailed description of a relatively

simple statutory subsection" as part of the operative text. *Val–Pak,* 862 So.2d at 6.

**3.** The Division of Statutory Revisions has been known by other names in the past although serving the same or similar function.

Florida Supreme Court decisions where the courts' discussions involve considerations of the statute's "text" and its "heading." *See, e.g., ContractPoint,* 986 So.2d at 1266; *State v. Stalder,* 630 So.2d 1072, 1074 (Fla.1994). It can readily be inferred from such an analysis that the court views the text and the heading separately as independent considerations evidencing the fact that they are not both "text."

### B. Subsection (1)(a) in Context

Syngenta next argues that the language of subsection (1)(a) identifying a sworn complaint as the sole prerequisite to legal action should be read in the context of the other subsections of sections 578.26 and 578.27, and in doing so, either ambiguity arises as to the required prerequisite(s) and/or the other subsections of sections 578.26 and 578.27 are rendered meaningless contrary to Florida law. *See Koile,* 934 So.2d at 1233 ("[C]ourts should avoid a reading that would render part of a statute meaningless." (internal citation and quotations omitted)). TRA does not oppose reading subsection (1)(a) in the context of the remainder of sections 578.26 and 578.27, but disagrees that the meaning of subsection (1)(a) is rendered ambiguous or that the remainder of the subsections are rendered meaningless as a result.

■ The Court recognizes and applies the Florida standard advanced by Syngenta but finds that subsection (1)(a)'s express language is still clear and unambiguous even when read in context of the entirety of sections 578.26 and 578.27. Further, allowing a prospective plaintiff to satisfy its prerequisite to legal action by simply filing a sworn complaint does not render the Process set forth in the remaining subsections and section moot, superfluous, or meaningless.

First, the Process provides a permissive remedy by which parties can attempt to resolve disputes without going through the time, expense, and other costs involved in litigation. Understandably, this Process is most beneficial if completed prior to the filing of a legal action in order to give guidance to the parties as to the merit of the claims, but nothing prevents a plaintiff from electing to litigate their claim without such guidance or the Process from running simultaneous to a legal action. An independent review of the claim obtained at the completion of the Process would still be beneficial to the parties throughout the pendency of the legal action and thus would not be rendered meaningless.

Next, a sworn complaint serves the important purpose of putting Syngenta on notice in sufficient time to preserve evidence and prepare a defense even if no further action under the sections' permissive Process is taken.

> The complaint shall be filed with the department, and a copy of the complaint shall be served by the department on the dealer by certified mail, *within such time as to permit inspection of the crops, plants, or trees ... by the dealer from whom the seed was purchased.*

Fla. Stat. § 578.26(1)(a) (emphasis added). Accordingly, the Court finds that the Legislature had a well-reasoned basis for drafting section 578.26 as it is written to put prospective defendants on notice whether it be in a legal or non-legal setting.

Therefore, subsection (1)(a) is unambiguous as written and its application as written does not result in an unreasonable outcome or render the accompanying subsections and section meaningless. TRA filed a sworn complaint and satisfied the sole statutory prerequisite for bringing a legal action.

### IV. Conclusion

In reaching its conclusion, the Court agrees that the statute's heading appears

inconsistent with the statute's text and is deserving of correction, but as a matter of law, the Court is not authorized to speculate as to what the Legislature may have intended and, instead, must merely apply the law as written. In this instance, the text is unambiguous and its application as written does not rendered other subsections and sections meaningless.

The text unequivocally states that the prerequisite to a legal action, without more, is the filing of a sworn complaint. TRA filed a sworn complaint prior to. bringing its legal action, and the Court will not and cannot read text into the law where it does not exist.

For these reasons,

IT IS ORDERED:

Syngenta's Motion, ECF No. 12, is hereby DENIED. The clerk shall set this matter for case management to discuss whether the scheduling orders, ECF Nos. 8 and 20, need to be amended.